IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Roy W. Iriel,                ) C. A. No. 2:07-3946-JFA-RSC
                             )
        Plaintiff,      )
                             )
    -versus-            ) **REPORT AND RECOMMENDATION**
                             )
Michael J. Astrue,           )
Commissioner of Social       )
Security,                    )
                             )
        Defendant.      )

This case is before the court pursuant to Local Rule 83.VII.02, D.S.C., concerning the disposition of Social Security cases in this District.

The plaintiff, Roy W. Iriel, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying the plaintiff's claims for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits on November 24, 2003, alleging that he became disabled on October 24, 2003, due to breathing problems and fatigue from sarcoidosis in his lungs, monthly episodes of gout causing right foot pain, chest pain and shortness of breath from coronary artery disease, neck and low back pain, anxiety and depression, lightheadedness and dizziness from medications, and lack of sleep. The application was denied initially and on

reconsideration by the Social Security Administration. The plaintiff filed a request for a hearing on December 4, 2004. The administrative law judge before whom the plaintiff appeared with counsel, and Dr. Luther Pearsall, a vocational expert, considered the case de novo, and on October 27, 2006, found that the plaintiff was not disabled under a disability as defined in the Social Security Act, as amended. (Tr. 13-23). The administrative law judge's opinion became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on October 11, 2007.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner adopted the following findings of the administrative law judge:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since October 24, 2003, the alleged onset date (AOD)(20 CFR 404.1520(b) and 404.1571 et seq.). ...
>
> 3. The claimant has the following severe impairments: sarcoidosis, coronary artery disease, degenerative changes of the cervical and lumbar spine, gout, depression, and anxiety (20 CFR 404.1520(c)). ...
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). ...
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to stand, sit, and walk six hours each in an eight-hour

>workday with the option to sit or stand at will and to frequently lift and carry 10 pounds with a heaviest weight lifted occasionally of 20 pounds. Additionally, the claimant is limited to work involving less than concentrated exposure to environmental respiratory irritants, including dusts, gases, strong odors and fumes as well as poor ventilation; not involving concentrated exposure to hazardous moving machinery; not requiring more than occasional twisting, bending, crouching, or crawling; not requiring long distance driving; not requiring reaching overhead; not involving more than occasional changes to work settings, rules and procedures; not involving work at unprotected heights; not involving concentrated to temperature extremes or high humidity; and not involving more than occasional interaction with others. ...
>
>6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565). ...
>
>7.   The claimant was born on March 10, 1955, and was 48 years old on the alleged disability onset date, which is defined as a younger individual age 45-49 (20 CFR 404.1563).
>
>8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
>9.   The vocational expert testified that the claimant had no skills that were transferable to "light" exertional jobs (20 CFR 404.1568).
>
>10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566). ...
>
>11.  The claimant has not been under a "disability," as defined in the Social Security Act, from October 24, 2003 through the date of this decision (20 CFR 404.1520(g)).

Tr. 15-23.

<u>APPLICABLE LAW AND REGULATIONS</u>

The Social Security Act provides that disability benefits

shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can expected to result in death or which has lasted or can be expected to last for at least 12 continuous months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an impairment contained in the Social Security Act listings of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Secretary's decision as long as it is supported by substantial

evidence. See <u>Pyles v. Bowen</u>, 849 F.2d 846, 848 (4th Cir. 1988) (*citing* <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

In short the only issue before the Court is whether the final decision of the Commissioner is supported by substantial evidence and proper legal standards have been applied.

## ISSUES PRESENTED

The plaintiff contends that 1.) the administrative law judge committed reversible error by not according proper weight to the opinion of treating cardiologist Dr. Stephen C. Miller, and 2.) not finding Plaintiff's testimony concerning his pain and other symptoms fully credible.

## TREATING PHYSICIAN RULE

First, the plaintiff argues that the administrative law judge erred in giving only limited weight to the opinion of the plaintiff's treating cardiologist, Dr. Dr. Stephen C. Miller[1].

---

[1] Plaintiff attached new medical opinions to his brief in support of his argument. See Plaintiff's Exhibit 7-2 (letter from Dr. Nivens, dated November 1, 2007), and Exhibit 7-3 (letter from Michael Ralph Smith, M.D., dated November 18, 2007). These letters are not considered here and are not a basis for remand to the Commissioner as Plaintiff has not met the standards for such established by <u>Borders v. Heckler</u>, 777 F.2d 954 (4th Cir. 1985). They are not relevant to the Commissioner's determination of disability, which only pertained to the time period of October 24, 2003, the alleged onset date of disability, through October

5

The Fourth Circuit Court of Appeals has held that "the opinion of a claimant's treating physician must be given great weight." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Such opinion is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.

While the Commissioner is not bound by the opinion of a claimant's treating physician, it may be disregarded only if there is persuasive contradictory evidence. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). Yet the court of appeals has also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record. Kyle v. Cohen, 449 F.2d 489, 492 (4th Cir. 1971). Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand. Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).

Here, in May 2004, Stephen C. Miller, M.D., Plaintiff's treating cardiologist, observed that Plaintiff had clear lungs, regular heart rate and rhythm, normal pulses and no edema. Chest x-rays showed his heart was mildly enlarged, but there was no congestive heart failure. (Tr. 283). Dr. Miller noted

---

27, 2006, the date of the administrative law judge's decision. Both of the letters are dated in November 2007, more than one year after the end of the relevant time period, and neither letter is retrospective. At oral argument before the undersigned on August 14, 2008, Plaintiff's attorney indicated that the plaintiff has reapplied for benefits and has submitted this evidence in support of his application.

Plaintiff's occasional episodes of chest pain and shortness of breath, and stated "I do not think that there is much that he can do." (Tr. 290). At that time Dr. Miller had treated Plaintiff for four years. Four months later, in September 2004, Dr. Miller noted that Plaintiff had no chest pain or shortness of breath and directed him to exercise more. (Tr. 495).

The administrative law judge gave limited weight to Dr. Miller's statement that he did not think there was much Plaintiff can do because the opinion appeared to be "based on Plaintiff's subjective complaints since his physical examination and EKG were essentially within normal limits." (Tr. 21).

It appears that correct legal principles were applied and that substantial evidence supports the administrative law judge's decision. In addition to citing the essentially normal objective findings above, Dr. Miller noted that Plaintiff had only "occasional" or "no" chest pain and shortness of breath. (Tr. 290, 495, 647), directed him to exercise more and "walk as much as possible" (Tr. 495, 646, 648), and pointed out in his most recent treatment notes that Plaintiff was "doing well" from a cardiovascular perspective. (Tr. 652, see also Tr. 647). Thus, it appears that substantial evidence supports the administrative law judge's conclusion that Dr. Miller's opinion that Plaintiff could not do "much" was based primarily on Plaintiff's self-reports. The administrative law judge was entitled to accord the opinion limited weight on that basis. (Tr. 21). See, Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) (inferences can be properly drawn from record evidence); Mastro

7

v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (fact that treating physician's diagnosis was based largely upon claimant's self-reported symptoms allowed administrative law judge to assign that opinion lesser weight); Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). The plaintiff is not entitled to relief on this ground.

## **CREDIBILITY DETERMINATION**

Second, the plaintiff argues that the administrative law judge erred in finding that Plaintiff's testimony concerning the persistence, intensity, and limiting effects of his symptoms was not entirely credible.

After a plaintiff has met his threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, the intensity and persistence of the plaintiff's pain and the extent to which it affects his ability to work, must be evaluated. See, 20 C.F.R. §§ 416.929(c)(1), 404.1529(c)(1). Under the regulations, this evaluation must take into account not only the plaintiff's statements about his pain, but also "all the available evidence," including the plaintiff's medical history, medical signs, and laboratory findings, see, id.; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), see, 20 C.F.R. §§ 416.929(c)(2), 404.1529(c)(2); and any other evidence relevant to

8

the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, see, 20 C.F.R. §§ 416.929(c)(3), 404.1529(c)(3).

The regulations, as does the statute, see, 42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain or other symptoms ... must be considered."), specifically provide for the consideration of objective medical evidence of the pain, if any such evidence exists, in the evaluation of its intensity and persistence. However, because pain is subjective and cannot always be confirmed by objective indicia, claims of disabling pain may not be rejected "solely because the available objective evidence does not substantiate [the plaintiff's] statements" as to the severity and persistence of his pain. 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); see also, Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989)("[T]here need not be objective evidence of the pain itself or its intensity."); Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir.,1986) 1129 (same). That is, once a medically determinable impairment which could reasonably be expected to produce the pain alleged by the claimant is shown by objective evidence, the plaintiff's allegations as to the severity and persistence of his pain may not be dismissed merely because objective evidence of the pain itself, as opposed to the existence of an impairment that could produce the pain alleged, such as inflamed tissues or spasming muscles, are not present to corroborate the existence of pain. Craig v. Chatter, 76 F. 3d 585, 594-5 (4th Cir. 1996.).

The plaintiff testified in his hearing that he experiences lightheadedness and dizziness ninety-five percent of the time. (Tr. 673) He further testified that he experiences shortness of breath and chest pains during any physical activity, even at a normal pace. (Tr. 677) The plaintiff also experiences muscle spasms four to five times per week, which cannot be alleviated with medication. (Tr. 678) The plaintiff also testified during his hearing that he had visited the doctor approximately 65 times over the year preceding his hearing. (Tr. 679)

The administrative law judge found that Plaintiff's subjective complaints concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible and supported that conclusion by a review of a plethora of medical evidence which indicated that the plaintiff can perform a limited range of light work. For example, the objective medical findings indicate that Plaintiff's heart and lung impairments were not disabling and would not preclude a limited range of light work since Plaintiff's last sarcoidosis flare-up was in late 2003, and he felt better and was "doing fine" after taking Prednisone. (Tr. 294, 408, 551). A CT scan and chest x-rays revealed that Plaintiff's lungs showed no sign of effusion, and his lungs remained clear in general. (Tr. 191, 283, 457, 464, 564-65, 649). Likewise, despite the presence of coronary artery disease, Plaintiff typically maintained normal sinus rhythm and a normal or only mildly-decreased ejection fraction. (Tr. 155, 171-72). He did not have congestive heart failure. (Tr. 283). These relatively mild objective findings support the residual

10

functional capacity determination and detract from Plaintiff's claim of "disabling" impairments. See, Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (administrative law judge could reject claimant's testimony because it was inconsistent with the objective medical evidence).

As to Plaintiff's musculoskeletal impairments, the opinions of both physicians who treated those impairments substantially support the administrative law judge's residual functional capacity determination. The administrative law judge pointed out that during the relevant time period Dr. Nivens found that Plaintiff needed to avoid bending, twisting and lifting over 30 pounds, and also needed to alternate sitting and standing (Tr. 198). The administrative law judge restricted Plaintiff's twisting and bending, limited him to lifting only 10-20 pounds, and included a sit-stand option. (Tr. 17). In addition, the most recent opinion from Dr. Holman indicated that Plaintiff had only a four percent impairment rating from his spinal problems and could "work light duty, eight hour days, lifting no more [than] 10 lbs. and avoid twisting and bending at the waist and long distance driving" (Tr. 203).

The administrative law judge correctly stated that this was "consistent with [Plaintiff's] residual functional capacity with the exception of the limitation to lifting [10] pounds maximum, which is not supported by the other evidence of record." (Tr. 18). The administrative law judge properly included the limitations that were consistent with the record as a whole concerning Plaintiff's musculoskeletal impairments. (Tr. 17, 21).

11

The physical residual functional capacity determination was also consistent with the assessments of Drs. Jones and El Ibiary, state agency physicians who reviewed Plaintiff's medical records and determined that he could perform a range of light work. (Tr. 228-31, 474-77). While Plaintiff argues that he had additional functional limitations due to muscle cramps that occurred "four to five times per week", no physician found that this problem significantly limited his activities. Plaintiff also argues that he spent most of his time in bed or on the couch, needed to lie down every day and therefore could not perform light work. However, the record does not indicate that any physician directed him to remain inactive; on the contrary, his physicians repeatedly directed him to get more exercise. (Tr. 410, 495, 646). See, e.g., Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991) (claimant's allegation that he had to recline or lie down several times per day was discounted because no physician suggested that the claimant's condition required such reclining).

To the extent Plaintiff alleges that he could not work due to drowsiness, lightheadedness, and dizziness from his medications, and that he had to spend most of his time in bed or on the couch, the administrative law judge noted that Plaintiff's physicians repeatedly found that he was alert and fully oriented (Tr. 172, 408, 410, 411, 417, 418, 421, 530, 574-75), and no physician ever directed him to limit his activities due to lightheadedness or dizziness, or any other side-effect. Other than two episodes in early 2004 (Tr. 411, 448), Plaintiff did not

tell his doctors that he was experiencing any lightheadedness and dizziness, despite testifying that these symptoms were present "95 percent of the time." (Tr. 673)  An administrative law judge may infer that a plaintiff's complaints of side-effects not credible when there was no medical evidence that he reported those side effects to his physicians.  See, e.g., Richmond v. Shalala, 23 F.3d 1441, 1443 (8th Cir. 1994).

In sum, substantial evidence supports the administrative law judge's determination that Plaintiff's subjective complaints of disabling physical limitations were not fully credible and that determination should be affirmed.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the decision of the Commissioner be affirmed.

Respectfully submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina,

October 2, 2008

13